RUCKER, J.,
dissenting in part.
I agree with the majority that the Bridgewater disability discrimination *6 claim fails because the alleged discriminatory practice — excluding one of the Bridgewater children from a meal at the Masquerade Ball due to her disability — did not “relat[e] ... to education” within the meaning of Indiana’s Civil Rights Act. Ind. Code § 22-9-1-3(1). However, I disagree that the Bridgewater retaliation claim is somehow derivative of and thus depends upon the disposition of the discrimination claim. Therefore on this issue I respectfully dissent.
Indiana’s Civil Rights Act reflects the State’s public policy to:
provide all of its citizens equal opportunity for education, employment, access to public conveniences and accommodations, and acquisition through purchase or rental of real property, including but not limited to housing, and to eliminate segregation or separation based solely on race, religion, color, sex, disability, national origin or ancestry, since such segregation is an impediment to equal opportunity.... The practice of denying these rights to properly qualified persons by reason of the race, religion, color, sex, disability, national origin, or ancestry of such person is contrary to the principles of freedom and equality of opportunity and is a burden to the objectives of the public policy of this state and shall be considered as discriminatory practices.
I.C. § 22-9-l-2(a), (b). The Indiana Civil Rights Commission was created under the auspices of the Civil Rights Act and is afforded certain authority and charged with certain responsibilities, including the responsibility to “receive and investigate complaints alleging discriminatory practices” and to “prevent any person from discharging, expelling, or otherwise discriminating against any other person because the person filed a complaint, testified in any hearing before this commission, or in any way assisted the commission in any matter under its investigation.” I.C. § 22 — 9—1—6(d), (g).
The majority takes the position that because the activities at issue did not “relate to education” the Commission had no authority to do anything other than dismiss the Bridgewater complaint. I cannot agree. Importantly, the Act prohibits “any person” from engaging in acts of discrimination. I.C. § 22 — 9—1—6(g). And a person is defined in part as “one (1) or more individuals, partnerships, associations, organizations, limited liability companies, corporations, labor, organizations ... and other organized groups of persons.” I.C. § 22-9-l-3(a). FACES certainly falls within the definition of the Act. To be sure there is a carve-out for certain employers. For example although the Act makes it unlawful for an employer to discriminate against its employee, excluded from the definition of “employer” is “any school, educational, or charitable religious institution owned or conducted by or affiliated with a church or religious institution.” I.C. § 22-9-l-3(h)(2). But the assertion here is not a claim based on employment discrimination. And in any case FACES does not contend it was acting as an employer with respect to Mrs. Bridgewater’s daughter.[1]
Further, the import of the majority’s holding is that retaliation is only a “discriminatory practice” when it is committed in response to the filing of a meritorious complaint with the Commission. I make two observations: First, correctly noting this is a matter of first impression, the Court of Appeals concluded “FACES is *7 sufficiently related to education such that the ICRC’s jurisdiction is proper.” Fishers Adolescent Catholic Enrichment Soc’y, Inc. v. Bridgewater, 990 N.E.2d 29, 41 (Ind.Ct.App.2013), vacated. And although the Court disagrees with our colleagues on this point, a respectable argument can be made that a good education is not composed solely of “the three Rs — reading, [‘jriting, and [Arithmetic.” [2] Rather, it also includes social skills.[3] In essence, one could reach the reasonable conclusion that the meal at the Ball “relates to education” and thus the Bridgewater complaint falls with the plain wording of the Civil Rights Act.
The facts of this case make clear the Bridgewater complaint was certainly not “meritless” as the majority contends. And the Commission was quite correct in entertaining and providing a remedy in favor of the Bridgewaters when FACES expelled the family in retaliation for filing the complaint in the first place. Second, the retaliation language in the statute itself says-nothing about an alleged “meritorious” complaint. Instead it tasks the Commission with the responsibility of “investi-gat[ing] complaints alleging discriminatory practices” and giving it authority to prevent retaliation “because the person filed a complaint, testified in any hearing before this commission, or in any way assisted the commission in any matter under its investigation.” I.C. § 22-9-l-6(d), (g) (emphases added).
In addition, the majority’s view is also inconsistent Federal retaliation precedent.[4] In the federal context, all that is required for a complainant to succeed on a retaliation claim is that he or she reasonably believed in good faith that the complained-of practice was discriminatory. See, e.g., Fine v. Ryan Int’l Airlines, 305 F.3d 746, 752 (7th Cir.2002) (even where district court found complainant’s discrimination claim failed as a matter of law, she could still prevail on her retaliation claim); Wilkins v. St. Louis Hous. Auth., 314 F.3d 927, 933 (8th Cir.2002) (recognizing that the Fifth, Seventh, Eighth, and Ninth Circuits have all used a reasonable-belief standard in the Title VII retaliation context).
Essentially, retaliation under the Act is a separate act of discrimination regardless of the outcome on the merits of the underlying complaint. Thus even though FACES prevailed on Bridgewater’s disability discrimination claim, it was nonetheless subject to the Bridgewater retaliation discrimination claim. See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 180-81, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005) (recognizing that the objective of preventing discriminatory practices “would be difficult, if not impossible, to achieve if persons who complain about ... discrimination did not have effective protection against retaliation.... Without protection from retaliation, individuals who witness discrimination would likely not report it ... and the underlying discrimination would go unremedied” (internal quotation omitted)).
*8 Today the majority rewrites Indiana’s Civil Rights Act, places an untenable burden on the Commission, and along the way ignores without explanation relevant federal precedent. I therefore cannot join its opinion. Instead I would affirm in part the Commission’s decision.[5]

. The majority seems to imply that the homeschooling/religious character of FACES exempts the organization from the reach of Indiana's Civil Rights Act. See op. at 3-5. It does not, although the Legislature could certainly do so if deemed appropriate.

. Christine Ammer, The American Heritage Dictionary of Idioms 457 (2d ed. 2013).

. See Ind. Dep’t of Educ., Indiana Academic Standards for Health & Wellness 79 (2010), available at www.doe.in.gov/sites/default/files/ standards/heal th-and-wellness/2010_health_ education_standards_literacy.pdf ("Students will demonstrate the ability to use interpersonal communication skills to enhance health and avoid or reduce health risks.... This standard focuses on how responsible individuals use verbal and non verbal skills to develop and maintain healthy personal relationships.”).

."In construing Indiana civil rights law our courts have often looked to federal law for guidance.” Filter Specialists, Inc. v. Brooks, 906 N.E.2d 835, 839 (Ind.2009) (citing cases).

. More specifically the Commission ordered FACES to take several remedial measures: (1) cease and desist from retaliating against persons because they filed a complaint with the ICRC; (2) post a link to the Commission's order on all websites on which FACES communicated information about the case; (3) pay emotional distress damages to the daughter of Mrs. Bridgewater in the amount of $2500; and (4) offer reinstatement of the Bridgewater family to full membership in FACES. I would reverse the Commission on this latter point as a violation of FACES' constitutional right of intimate association. See generally Roberts v. U.S, Jaycees, 468 U.S. 609, 612, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (“addressing] a conflict between a state's efforts to eliminate gender-based discrimination against its citizens and the constitutional freedom of association asserted by members of a private group”).